BENTON *vs.* O'FALLON, EXECUTOR OF MULLANPHY.

1. B., in 1819, mortgaged the lot in question to M., who obtained a judgment of foreclosure, in 1824, upon which no execution was issued. A few days after the judgment, M. signed a writing, to the effect, that he would convey to B. a certain,lot whenever B. redeemed the mortgage. In 1827, M. purchased the equity of redemption of B., in the mortgaged lot, at sheriff's sale, under a judgment against B., in favor of the Bank of Missouri. ·

    B., in 1837, filed his bill to redeem the lot, upon the ground that the sale, in 1827, was illegal and void, and that the writing signed by M., in 1824, gave B. an indefinite time for redemption.

    *Held:* That the sale of the lot, in 1827, was legal, and that M., at such sale, purchased the equity of redemption of B. The purchase of M., at this sale, was entirely independent of th judgment of foreclosure and the subsequent agreement, and could not be affected thereby.

2. The interest of B., in the lot mortgaged, continued to be an equity of redemption, after the judgment of foreclosure, until the sale of the equity, in 1827, to M.

APPEAL from St. Louis Court of Common Pleas.

SPALDING *and* TIFFANY, *for Appellant.*

1. The interest that Benton had in the lot in question, embraced in the mortgage, was not vendible on execution. (Geyer's Digest, 307, 8; Old Revised Code, 593–5; 12 Mass. Rep., 387.) That a statutory right to redeem not vendible on execution, Old Rev. Code, 462, shows alienee subject to prior judgment.

2. Incumbrance is held extinct by merger, or not, according to' justice and equity.—6 Johns. Ch. Rep., 395.

3. The lot west of the mortgaged property ought to be conveyed to Benton. (1 Madd. Ch., 362, 368, 376.) 1. Possession was not tenancy: no rent stated: no possession of lot by Mullanphy. 2. Mortgage is paid off by the purchase by Mullanphy: what, then, has become of the $250? Mullanphy cut off the right to redeem by sale.

4. Laches does not prevent continued possession by Benton.

H. R. GAMBLE, *Counsel for Appellees,* submitted a written argument upon the points made by appellant's counsel.

NAPTON, J., *delivered the opinion of the Court.*

This was a suit in chancery, to redeem a mortgage upon a lot in Saint Louis, commenced in the Circuit Court, and afterwards transferred to the Common Pleas of St. Louis. The original bill was filed in 1837; it stated, that complainant, to secure to Mullanphy the payment of $2000, payable twelve months after date, with interest at ten per cent. per annum, payable semi-annually, mortgaged to him, in June, 1819, the lot in question; that Mullanphy died in 1833, leaving as

his executor and heirs the parties defendants. The bill alleged, that the complainant, ever since the execution of the mortgage, has remained in possession; that the interest upon the mortgage debt has been regularly paid to said Mullanphy during his life-time; that, since his death, and in June, 1837, he tendered to O'Fallon, executor of said Mullanphy, the principal and interest due on said mortgage, for the purpose of redeeming, but said O'Fallon refused to accept the same.

The defendants answered, denying, that the complainant had paid the interest on the mortgage debt, and alleging, that in November, 1824, a decree of foreclosure was made in the Circuit Court of St. Louis, ascertaining the debt and interest as amounting to $3,083 34.

The answer further alleged, that in March, 1826, the Bank of Missouri recovered a judgment against complainant for $7,076 14; that execution issued on this judgment, 8th February, 1827; that a levy and sale followed, in accordance with law, and the sheriff, by deed, dated April 2, 1827, conveyed to Mullanphy all complainant's interest in said lot.

The answer admits, that the said complainant, Benton, has remained in possession of the property ever since the mortgage was executed; but insists, that such possession was in the character of tenant, ever since the purchase, by Mullanphy, under the execution.

At the November term, 1838, the complainant filed an amended bill, in which the judgment in favor of the Bank *vs.* Benton is admitted, and the execution, levy and sale, but charges that said judgment, execution and sale, were irregular and void; that there was no such corporation existing as the President, Directors & Company of the Bank of Missouri, the charter having expired by non-user, &c.

At the November term, 1840, the bill was again amended, at the instance of the complainants; this last amended bill set forth the mortgage and proceedings to foreclosure in 1824, judgment, &c., but alleged that no execution ever issued thereon; that, after the rendition of the judgment, to wit, on 10th November, 1824, complainant and Mullanphy had a settlement, and that said Mullanphy, having purchased, at sheriff's sale, a lot of ground, lying west of and adjoining the mortgaged premises, then proposed to sell the same to complainant, as being a convenient appendage to said complainant's mansion-house, said mansion-house being the same property mortgaged, for the sum which he (Mullanphy) had paid for the same; that, at the same time, said Mullanphy agreed, that the said complainant might redeem the said mortgaged premises, and that, when the complainant should redeem said premises, he, Mullanphy, would convey to him the lot of ground lying west and adjoining to the same; that the complainant then paid to Mullanphy the sum of $250, the price asked by him for the lot lying at the west of said mortgaged premises, and that said Mullanphy further agreed, that if the complainant did not redeem, he should be credited with the $250. Bill charges, that said sum of $250 was never credited, &c.; that said Mullanphy, as evidence of the aforesaid agreement signed a memorandum, entered by the complainant in his private memorandum book, in the words following: "Novem-

ber 10th, 1824.—This day adjusted all accounts with Mr. John Mullanphy, and paid him all outstanding balances, the mortgage in suit, and his assumpsit, to convey to me the lot west, of me, on my paying up the mortgage, or crediting me with $250 if I did not, being reduced to writing, and closing our business.

"JOHN MULLANPHY."

The amended bill further charges, that said lot lying west, &c., in equity belongs to complainant; and avers, that, by the terms of the above agreement, the complainant was permitted to redeem the mortgage premises for an indefinite time; and complainant avers, that, at the time of the settlement aforesaid, he paid to said Mullanphy all the interest upon the mortgage debt up to that time, and hath since paid the same interest to the present time: complainant not only, then, claims a right to redeem the mortgaged premises, but prays a conveyance of the lot west, &c.

The defendants answered the amended bill, by stating their ignorance of the agreement set out, relying on the Statute of Frauds, if such agreement was made, and alleging that such agreement, if made, was abandoned by the parties, since the complainant had long paid rent for the premises.

On the hearing, the complainant gave in evidence the record of the foreclosure; a deed to Mullanphy for the lot west of the mortgaged property, and the memorandum signed by Mullanphy, as set out in the amended bill.

The defendants proved, that complainant had resided on the mortgaged premises during his residence in this State, and had occupied no other house of Mullanphy's, and produced a letter from complainant, as follows:

"WASHINGTON, December 10th, 1832.

"*Dear Sir:*—I enclose you a certificate of deposite to your credit, in United States Branch Bank in this city, for the rent of the current year, and continue the place for the next year.—Yours, respectfully,     THOMAS H. BENTON.

"Mr. JOHN MULLANPHY, St. Louis."

The defendants also gave in evidence, the judgment in favor of the bank, the execution, sale, and sheriff's deeds, under which they claimed the property.

Upon this testimony, the bill was dismissed, and the complainant appeals.

The claim of the appellant is based upon the alleged invalidity of the sheriff's sale, in 1827, and upon the memorandum, signed by Mullanphy, which, it is contended, gave Benton an indefinite time for redemption.

The first proposition depends upon the saleability of an equity of redemption under execution, in 1827; and this question, since the case of McNair and Others *vs.* Mullanphy's Executors and Heirs, has been thought to be settled. In that case, the saleability of an equity of redemption under *fieri facias*, by virtue of the act of 1807, was deliberately examined, and the legality of such sales sustained, after an elaborate discussion at the bar, and with a knowledge of the weight respectable authority arrayed against the position. The reasons which influenced the court, in its decision, were fully detailed in the opinion delivered by Judge Scott; and in that portion of the opinion, it is understood, Judge Tompkins entirely concurred. If the language of the act of 1807, which declares, that all the lands, tenements and hereditaments "should be liable to be sold on exe-

cution, be held sufficient to comprehend equities of redemption, *a fortiori*, the act of 1825, which subjects" all the lands, tenements and real estate, whereof such person was seized in law or equity, to execution, will embrace such interests.

But it is attempted to withdraw the present case from the operation of this decision, by contending, *first*, that Benton's interest in the land, after the judgment of foreclosure, was not an equity of redemption; and, *second*, that the judgment obtained by Mullanphy, in 1824, operated as an estoppel, and prevented him and his heirs from ever denying the right of Benton to redeem.

The act under which the judgment of 1824 was obtained, provided that the sale should not take place until nine months after the filing of the petition, and declared, that until the sale, the mortgagor might redeem, by paying the debt, interest and costs. (Geyer's Digest, 308.) This right of redemption, until it was cut off by sale, we suppose would have been necessarily incident to the nature of the proceedings, without any special recognition of it in the statute. The act, in this respect, appears to be merely declaratory, and the principal object of the section in which this right of redemption is mentioned, is to fix the time within which the sale may take place, giving the mortgagor some privileges not extended to other debtors. The proceedings, under this act of 1807, as has been decided by this Court, in more than one case, are proceedings at common law, and are not governed by the rules which regulate proceedings in chancery. The judgment is merely for the recovery of the mortgaged debt, and a special *fieri facias* issues against the mortgaged property. Until levy and sale, the relations of the parties are not changed; the right to pay off the debt, interest and costs is the same right which every debtor has against whom there is a judgment; a right, as was observed by the counsel for the appellees, to prevent the sale of his property under execution, by paying up the debt.

The case of Kelly and Wife *vs.* Beers, (12 Mass. Rep., 388,) does not sustain the position of the appellant. The law of Massachusetts authorized the officer to sell the right of redemption; but, by the same law, the debtor was allowed, after the sale, three years, to redeem, as against the purchaser. The court held, that after sale, nothing remained in the judgment debtor upon which an execution could operate. The debtor had not, according to the view which the court took of the act, any estate or interest in the land, but a mere privilege or right to redeem within a specified time, which was likened to a right of pre-emption.

The case is certainly not analagous to the present. In Massachusetts, the debtor, after the sale of his equity of redemption, had a right or personal privilege as against the purchaser, to redeem within three years. This right, thus given by the statute, was considered not vendible under execution, nor, indeed, transferable to any other in any way. The privilege was confined to the debtor. Our statute conferred no such privilege; but merely declared, what would have been the law without any such declaration, that, up to the sale, the mortgagor could redeem, by paying off the debt. The interest and estate of the mortgagor remained the same, after judgment, as before, and continued to be an equity of redemption, until it was cut off by sale. Indeed, if the judgment annihilated, or cut off the mortgagor's estate in the mortgaged premises, upon what could the

special *fieri facias,* authorized by the act, operate?' If the mortgagor had no longer any equity of redemption, but a mere "*facultative interest,*" upon which no execution, at least, in favor of any third person could operate, of what avail would be the execution issued at the instance of the mortgagee?

The whole argument rests upon the assumption, that our statutory proceedings to foreclose a mortgage operates in the same mode as the ancient method of foreclosing a mortgage in equity. Hence the counsel insists, that, by the judgment of foreclosure, the mortgage debt is absorbed, just as much as, on a judgment on a note or bond, the instrument is absorbed, and the simple contract, or specialty debt, is converted into a debt of record. It may be admitted, that the mortgaged debt is absorbed by a judgment of foreclosure under this statute, so that the mortgagee could not again bring a suit upon the mortgage, but it does not therefore follow, that the mortgagor's estate or interest in the land has been swallowed up in the judgment, so that no execution can reach it.

In short, if the construction contended for were the true one, the statute would afford a very convenient mode of protecting the largest estates from the reach of creditors. A debtor might mortgage his whole estate, a large and valuable one, we will suppose, for an inconsiderable sum, and by suffering a judgment of foreclosure, protect it indefinitely from the executions of every other creditor. This could not have been the intent of the law.

But it is said, that, admitting the general saleability of the complainant's equity of redemption, Mullanphy could not become the purchaser, because, *first,* he was estopped by the judgment of foreclosure, from denying the redeemability of the mortgage; and, *second,* it is against the policy of the statute to permit Mullanphy, in this way, to foreclose and cut off the complainant's equity of redemption.

The opinion of this Court, in the case of McNair and Others *vs.* Mullanphy's Executors and Heirs, is cited in support of the first of the two objections.

In that case, Mullanphy, in 1823, brought suit upon the bond, (to secure which the mortgage was given) obtained judgment and execution, and purchased the mortgaged premises levied on, at sheriff's sale. Afterwards, in 1824, he brought a petition for foreclosure, and obtained a judgment; which judgment continued unexecuted and unreversed, until the institution of the proceedings to redeem. The court considered the judgment of foreclosure a solemn admission of McNair's right to redeem.

That case, in all its leading features, is certainly very dissimilar to the present. There the main objection to Mullanphy's title was clearly founded on the fact, that he himself instituted a suit for the money secured by the mortgage, had the execution levied upon the mortgaged premises, and became the purchaser at the sale, thereby claiming to have extinguished the equity of redemption. Such proceedings, on the part of the mortgagee, if tolerated, would most obviously have defeated many important rights and privileges, secured to mortgagors by the statute directing the mode of foreclosure.

In the present case, Mullanphy obtains a judgment of foreclosure, upon which, it seems, no execution is issued; three years afterwards, a suit is instituted against Benton, by the Bank of Missouri, judgment recovered, and an execution

levied upon Benton's equity of redemption. Mullanphy becomes the purchaser, and thereby unites the equitable to his legal title, unless such purchase was void or inoperative. How the judgment of foreclosure, obtained three years previous, is to preclude Mullanphy from afterwards buying the equity of redemption, set up at public auction, by persons, and through proceedings over which he had no control, we are at a loss to conjecture. Conceding this judgment of foreclosure to have been a solemn admission of the complainant's right to redeem, it is difficult to see how it is to prevent him from subsequently acquiring a complete title.

There is nothing in the policy of the law to forbid the acquisition of the equity of redemption in this mode. We must not overlook the important fact, that the sale, at which Mullanphy purchased, was not occasioned by any act of his, nor was it the result of the proceedings at all under his control; and to maintain that the policy of the mortgage act prohibits his purchasing at such a sale, must amount to the general proposition, that a mortgagee cannot bid at a sale under execution of another creditor; a proposition which is not sustained by any of the courts, watchful as they have been of the interests of the mortgagor, and careful as they have been to prevent any undue advantage being taken.

The second point relied upon by the appellant, is the agreement contained in the memorandum, signed by Mullanphy, and set out at large in the complainant's amended bill. This memorandum is dated in 1824, ten days after the judgment of foreclosure, and seems to be an agreement on the part of Mullanphy, that he would convey to Benton the lot west of the mortgaged premises, whenever he (Benton) redeemed said mortgaged lot, and if said lot was not redeemed, that he would credit him with $250. It does not appear, from the terms of this agreement, that any time was specified, within which the redemption of the mortgage might be effected. Three years afterwards, (in 1827) Mullanphy purchased the equity of redemption, and from that time, up to his death, according to the answer of the defendants, complainant occupied the premises as Mullanphy's tenant. The agreement to convey the lot west of the mortgaged lot was made conditional, on the payment of the mortgaged debt. That condition was not complied with, previous to the extension of the equity of redemption, in 1827.

This memorandum, like the judgment of foreclosure, with which it was contemporary, can interpose no obstacle in the way of the subsequent acquisition of title in 1827, from a source and in a mode entirely disconnected with, and independent of, either the agreement or judgment.

It would seem, from the answer of the defendants, sustained, as it is, by the most satisfactory proof, uncontradicted and unexplained, that in 1832, this agreement was considered, by both parties, as abandoned, or virtually annulled by the conduct of Mullanphy in 1827. The letter of the complainant to Mullanphy, in 1832, enclosing money or draft to pay the rent, and contracting for the occupation of the premises as tenant for another year, is conclusive, as to the understanding of the parties at this time.

As to the $250, alleged to have been advanced as the purchase money of this lot, thus contingently agreed to be conveyed, we do not see how any question can arise in relation to it, until Mullanphy attempts to enforce the collection of the

bond for which the mortgage was given, and upon which it was to be a credit, in the event the mortgage was not redeemed.

Judgment affirmed.